# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **AT&T Mobility Services, LLC,** | **Case No. 1:19cv2539** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **Robert Boyd,** | |
| **Defendant** | **MEMORANDUM OPINION AND ORDER** |

Currently pending are Defendant Robert Boyd's (1) Motion for Leave to Conduct Limited Discovery; and (2) Motion for Leave to File Supplement to Motion to Conduct Limited Discovery Instanter and Motion to Strike the Declaration of Jeremy Dunlap. (Doc. Nos. 18, 20.) Plaintiff AT&T Mobility Services, LLC opposes both motions. (Doc. Nos. 19, 22.) For the following reasons, Defendant's Motions (Doc. Nos. 18, 20) are DENIED.

**I. Background**

    **A. Factual Allegations**

Defendant Robert Boyd began his employment with Plaintiff AT&T Mobility Services, LLC (hereinafter "AT&T") in 2010. (Decl. of Robert Boyd ("Boyd Decl.") (Doc. No. 10-1) at ¶ 4.) Beginning in April 2016, he was employed as an Assistant Manager at various AT&T retail locations throughout Ohio. (Declaration of Deirdre Scott ("Scott Decl.") (Doc. No. 1-2) at ¶ 4.) In March 2017, Boyd worked as an Assistant Manager at AT&T's retail store located in Fairview Park, Ohio. (Boyd Decl. at ¶ 5.) Several months later, in May or June 2017, Gerald Cummings became the Store Manager of the Fairview Park location and, as such, was Boyd's direct supervisor. (*Id*. at ¶ 7.) *See also* Decl. of Gerald Cummings ("Cummings Decl.") (Doc. No. 1-4) at ¶ 4).

As an AT&T employee, Boyd had an email account and a "point of sale" account (referred to as an "OPUS" account), each of which required a unique user identification ("UID") and password. (Boyd Decl. at ¶ 6.) At all times relevant herein, Boyd's user identification was "RB181Q" and his AT&T email address was RB181Q@us.att.com. (Decl. of Brandy Giordano ("Giordano Decl.")) (Doc. No. 1-3) at ¶ 6; Cummings Decl. at ¶ 6.) Boyd avers that he used the same password for both his email and OPUS accounts. (Boyd Decl. at ¶ 6.)

AT&T introduced evidence that, as part of his position as Assistant Manager, Boyd was required to monitor emails received at his RB181Q@us.att.com email account and "respond appropriately." (Cummings Decl. at ¶ 7.) AT&T uses a software program called "Promenta" to widely distribute documents and emails (including communications regarding AT&T policies) to large groups of its employees. (Declaration of Jeremy Dunlap ("Dunlap Decl.")) (Doc. No. 1-5) at ¶ 4; Giordano Decl. at ¶ 9.) On July 12, 2017, AT&T Lead HR Specialist/Generalist Brandy Giordano sent an email with the subject line "Action Required: Notice Regarding Arbitration Agreement."[1] (Giordano Decl. at ¶ 11.) This email stated:

> AT&T has created an alternative process for resolving disputes between the company and employees. Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court, and may be faster.
>
> The decision on whether or not to participate is yours to make. To help you make your decision, it is very important for you to review the Management Arbitration Agreement linked to this email. It provides important information on the process and the types of disputes that are covered by the Agreement.

---

[1] This email was sent to "all of AT&T's U.S.-based employees who had either recently been promoted to a management position since the prior round of notifications about the Arbitration Program, or who had been on a leave of absence during the period when the prior notifications went out." (Giordano Decl. at ¶ 11.) Ms. Giordano stated that this particular email was sent to 2, 217 AT&T employees. (*Id.*)

2

> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Monday, September 11, 2017 to opt out -- that is, decline to participate in the arbitration process -- using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.
>
> **Instructions for "Opting Out" of the Agreement**:
> To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out. The company will acknowledge in writing that it has received your opt-out request, and an opt-out attempt is invalid unless and until the company's acknowledgement is sent. If you have attempted to opt out and have not received the confirmation, please email the Management Arbitration Agreement team at g04780@att.com.
>
> Remember, the decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement. If, contrary to this assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).
>
> If you have any questions about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").
>
> **Important: September 11, 2017 is the deadline to act if you do not wish to resolve disputes through arbitration.**

(Doc. No. 1-3 at PageID# 38.) The Management Arbitration Agreement ("MAA") itself could be accessed by clicking on a hyperlink contained in the email. (*Id*.) This link took the recipient to the AT&T intranet page, which could not be accessed until the person attempting to view it logged into AT&T's systems with a valid UID and password (referred to as the employee's "Global Log-In"). Once the employee logged in, he or she could review the entirety of the MAA and click on a button marked "Review Completed." (Giordano Decl. at ¶ 12-13.) The Promenta system was configured to record the date and time on which each user accessed the MAA and clicked the "Review Completed" button. (*Id*.)

3

In relevant part, the MAA provides that it is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and that "any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation." (Doc. No. 1-3 at PageID# 40.) It describes the claims covered by the agreement as including "those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the . . . , Civil Rights Act of 1964, . . . , Family Medical Leave Act, Fair Labor Standards Act,. . . . and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims." (*Id*. at PageID#s 40-41.)

Reminder emails regarding the MAA and the September 11, 2017 opt-out deadline (which were identical to the July 12, 2017) email were sent on July 27, 2017 and August 11, 2017. (Dunlap Decl. at ¶ 8; Giordano Decl. at ¶ 14.)

AT&T submitted evidence that it contends shows that Boyd received all three of the MAA emails discussed above. Specifically, AT&T submitted the Declaration of Jeremy Dunlap, an Application Development Specialist at Accenture, which "has provided AT&T with consulting services including technical support for various computer systems and software applications utilized by AT&T," including Promenta. (Dunlap Decl. at ¶¶ 3-4.) Mr. Dunlap averred that emails with the subject heading "Action Required: Notice Regarding Arbitration Agreement" were sent to Boyd's AT&T email account at RB181Q@us.att.com on (1) July 12, 2017 at 4:02 a.m. Pacific Time; (2) July 27, 2017 at 3:02 a.m., Pacific Time; and (3) August 11, 2017 at 3:02 a.m. Pacific Time. (*Id*. at ¶ 8.) *See also* Doc. No. 1-5 at PageID# 60. Mr. Dunlap further averred that the MAA "was accessed on

4

August 14, 2017 at 4:59 p.m. Pacific Time by someone logged in using the AT&T username RB181Q." (*Id*. at ¶ 9.) *See also* Doc. No. 1-5 at PageID#62. He states that "the same user clicked the button marked 'Review Completed' at the bottom of the Management Arbitration Agreement at 4:59 Pacific Time n August 14, 2017." (*Id*. at ¶ 10.) *See also* Doc. No. 1-5 at pageID#64.

It is undisputed that Boyd did not opt-out of the MAA by the September 11, 2017 deadline. Boyd, however, claims that he "did not receive any emails regarding the MAA." (Boyd Decl. at ¶ 15.) He asserts that there was a "common company practice" of Assistant Managers sharing their UIDs and passwords with sales representatives and support staff, so they could access the Assistant Manager's AT&T accounts to retrieve codes that were needed to perform certain business transactions including returns, overrides, inventory check-ins, inventory accounts, and pricing adjustments. (*Id*. at ¶ 10.) Boyd avers that he followed this "common practice" and shared his passwords when he was Assistant Manager at the Fairview Park store. (*Id*.) Boyd also claims that he shared his UID and password with Cummings. (*Id*. at ¶ 8.) Specifically, he claims that, when Cummings first assumed the position of Store Manager at the Fairview Park location, Cummings did not have his own credentials to access email and OPUS. (*Id*.) Boyd alleges that Cummings therefore directed Boyd to provide him with his UID and password, and Boyd complied. (*Id*.)

Cummings, on the other hand, states that his "understanding is and always has been that asking for or disclosing an individual's passwords is contrary to AT&T policy." (Cummings Decl. at ¶ 9.) He stated that "at no point have I ever asked for or known Boyd's passwords." (*Id*.)

Boyd continued to work at various AT&T retail locations until he was terminated in July 2019. (Scott Decl. at ¶ 4.)

B.   **Procedural History**

5

On July 15, 2019, Boyd filed a Complaint in the Cuyahoga County Court of Common Pleas against AT&T Services, Inc. and AT&T Area Manager Megan Mannot, alleging state law claims of race discrimination, harassment, retaliation, violation of public policy, and wage and hour violations. *See Boyd v. AT&T Services, Inc.*, Cuyahoga County Court of Common Pleas Case No. CV-19-918231. Boyd filed an Amended Complaint on August 8, 2019 raising the same claims, but naming AT&T Mobility Services, LLC and Ms. Mannot as Defendants. *Id.*

On October 30, 2019, AT&T filed the instant action in this Court, in which it seeks orders (1) compelling arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4; and (2) prohibiting Boyd from litigating his claims in the state court action referenced above. (Doc. No. 1.) On that same date, AT&T filed a Motion to Compel Arbitration and for Preliminary Injunction. (Doc. No. 3.) Boyd filed a Brief in Opposition on November 22, 2019, to which AT&T responded on December 5, 2019.[2] (Doc. Nos. 10, 13.)

On February 3, 2020, this Court issued an order setting an evidentiary hearing for February 18, 2020. (Doc. No. 15.) The Order specified that "questioning shall be limited to the issues of whether an enforceable arbitration agreement exists between the parties and, relatedly, whether a preliminary injunction should issue." (*Id.*) Upon the parties' motion, the evidentiary hearing was rescheduled for April 28, 2020. (Doc. No. 16; Non-Document Order dated February 10, 2020). Subsequently, and due to the limitations imposed by the COVID-19 pandemic, the evidentiary hearing was rescheduled for August 28, 2020.

---

[2] Meanwhile, on October 31, 2019, AT&T filed a motion in the state court action to stay those proceedings "until after the U.S. District Court determines whether [Boyd's] claims must be pursued in arbitration." *See Boyd v. AT&T Services, Inc.,* Cuyahoga County Court of Common Pleas Case No. CV-19-918231. Boyd filed a response indicating he did not oppose the motion. The state court stayed the case on November 12, 2019.

On April 1, 2020, Boyd filed a Motion for Leave to Conduct Limited Discovery. (Doc. No. 18.) Therein, Boyd asks the Court to issue an Order directing AT&T to provide contact information for certain current and former employees so that Boyd "may contact these individuals to interview them and ascertain if they have any relevant information." (*Id*.) AT&T filed a Brief in Opposition on April 6, 2020, in which it argued that Boyd's Motion should be denied because he had failed to articulate any specific reason to believe the named individuals possess any relevant information. (Doc. No. 19.)

Boyd did not timely file a Reply. Rather, on April 14, 2020, Boyd filed a Motion for Leave to File Supplement to Motion to Conduct Limited Discovery and to Strike the Declaration of Jeremy Dunlap. (Doc. No. 20.) In this Motion, Boyd directed the Court's attention to the Sixth Circuit's recent decision in *Taylor v. Pilot Corp*., 955 F.3d 572 (6th Cir. 2020). In addition, Boyd requested that he be granted leave to conduct two 30(b)(6) depositions prior to the evidentiary hearing. (*Id*.) AT&T opposed the motion. (Doc. No. 22.)

**II.      Legal Standard**

Fed. R. Civ. P. 26(b)(1) provides as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The party requesting discovery "bears the initial burden of proving that the information sought is relevant." *Hendricks v. Hazzard*, 2013 WL 4052873 at *3 (S.D. Ohio Aug. 12, 2013) (internal citation omitted). *See also O'Malley v. Naph Care*, 311 F.R.D. 461, 463 (S.D. Ohio

7

2015). "When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Wagner v. Circle W Mastiffs*, 2013 WL 4479070 at *3 (S.D. Ohio Aug. 19, 2013) (citation omitted).

While the scope of discovery is "traditionally quite broad." *Lewis v. ACB Bus. Servs, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998), the Sixth Circuit has explained that the desire to allow broad discovery "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991).

**III.     Analysis**

    **A.     Motion for Leave to Conduct Discovery**

In his Motion for Leave, Boyd asks this Court to order AT&T to provide the contact information for certain "potential witnesses in this case ([Boyd's] former co-workers at AT&T), so his attorneys may contact these individuals to interview them and ascertain if they have any relevant information." (Doc. No. 18.) AT&T argues that the majority of the individuals identified by Boyd have "no apparent connection to the issues before the Court" and that Boyd's request is "a fishing expedition and nothing more." (Doc. No. 19.)

The record reflects that, on March 11, 2020, counsel for Boyd emailed counsel for AT&T a list of thirteen (13) individuals that he intended to call as witnesses at the evidentiary hearing in this matter. (Doc. No. 18-3 at PageID# 235-236.) Boyd requested the last known contact information for the individuals on the list who were no longer AT&T employees, as well as for a current employee named Joseph Gladfelter. (*Id.*)

8

Counsel for AT&T responded the following day and agreed to provide contact information for the first three individuals on Boyd's list; i.e., Brandy Giordano, Gerald Cummings, and Jeremy Dunlap. (Doc. No. 18-3 at PageID#235.) However, AT&T refused to provide contact information for the remaining individuals on the list on the grounds that "we do not believe that witnesses 4 – 13[3] have anything relevant to say on the question of whether Mr. Boyd received the three emails about the arbitration agreement in July and August 2017 and subsequently failed to opt-out." (*Id*.)

In response, counsel for Boyd stated that "these are individuals we would like to interview to determine if they have relevant, non-cumulative information regarding the way AT&T notified its employees of its arbitration plan." (*Id.* at PageID# 234.)

For the following reasons, Boyd's Motion for Leave to Conduct Discovery (Doc. No. 18) is denied. As noted above, the evidentiary hearing in this matter is limited to the issues of "whether an enforceable arbitration agreement exists between the parties and, relatedly, whether a preliminary injunction should issue." (Doc. No. 15.) Boyd fails to sufficiently articulate any basis for concluding that the individuals listed in the March 11, 2020 email possess information relevant to these issues. Indeed, aside from generally describing the individuals as "former coworkers," Boyd does not provide any specific information about these individuals (such as the nature of their interactions with Boyd and/or their familiarity or knowledge of AT&T's email communications regarding the arbitration program) nor does he provide any explanation as to the basis for his belief that these individuals may possess information relevant to the issues to be addressed at the upcoming hearing.

---

[3] Witnesses 4 through 13 are Brian Uszak, Marcus Smith, Joseph Gladfelter, Melissa Fontanez, Colleen Siegert, Justin Magazine, Sam Irizzari, Erica Campo, Elizah Torres, and Christopher Veverka. (*Id*.)

Boyd's vague and conclusory assertion that the listed individuals may have unspecified relevant information is insufficient, even under the generally liberal standard for discovery under Rule 26.

Accordingly, Boyd's Motion for Leave to Conduct Discovery (Doc. No. 18) is denied.

**B.     Motion for Leave to File Supplement to Motion to Conduct Limited Discovery Instanter and Motion to Strike the Declaration of Jeremy Dunlap (Doc. No. 20)**

In his Motion for Leave to File Supplement to Motion to Conduct Discovery, Boyd directs this Court's attention to the Sixth Circuit's decision in *Taylor v. Pilot Corp.*, 955 F.3d 572 (6th Cir. 2020), which was issued on April 9, 2020. (Doc. No. 20.) In that case, Taylor filed a FLSA collective action complaint against Pilot, asserting claims that Pilot argued were covered by an arbitration agreement. The district court granted conditional certification, after which plaintiff moved to compel the production of employment dates of all opt-in plaintiffs. *Id.* at 574-575. In their motion, plaintiffs argued the employment dates were relevant because they would show that several opt-in plaintiffs were not employees of Pilot on the date that Pilot claimed they signed the arbitration agreement and, therefore, no agreement to arbitrate existed as to those opt-ins. *Id.* Pilot opposed the motion, asserting that, under the broad delegation clause in the arbitration agreements, only the arbitrator could decide whether Pilot must turn over the employment dates and whether the arbitration agreements were formed. *Id.*

While plaintiffs' motion was pending, Pilot filed a motion to compel the opt-in plaintiffs to arbitrate their claims. *Id.* Before ruling on Pilot's motion to compel arbitration, the district court granted plaintiffs' motion to compel employment dates, finding that the employment dates were necessary to determine the threshold question of whether certain opt-in plaintiffs even agreed to arbitrate. *Id.*

Pilot filed a motion to reconsider, which the district court denied. *Id*. Pilot appealed the district court's order denying its motion to reconsider. *Id*. The district court then denied Pilot's motion to compel arbitration without prejudice, and Pilot separately appealed that order as well. *Id*.

The Sixth Circuit determined that it lacked jurisdiction to hear Pilot's consolidated appeals because the district court had not yet issued an order "denying a petition under section 4 [of the FAA] to order arbitration to proceed," for purposes of 9 U.S.C. § 16(a)(1)(B). *Id* at 576. However, the court nonetheless explained as follows:

> This Court has not expressly addressed whether a district court may decide whether a valid arbitration agreement has been formed prior to adjudicating a motion to compel arbitration, when a delegation clause purports to grant an arbitrator authority over contract formation issues. The Supreme Court recently noted that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer and White Sales, Inc*., ––– U.S. ––––, 139 S. Ct. 524, 530, 202 L.Ed.2d 480 (2019). In *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010), the Supreme Court held that to be satisfied that the parties have agreed to arbitrate a particular dispute and thus may order arbitration of that dispute, a district court "must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id*. at 297, 130 S.Ct. 2847.
>
> The Supreme Court has expressly declined to decide the more specific question of whether an arbitration agreement can deprive a district court of the authority to decide the formation question. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the Supreme Court held that "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Id.* at 444 n.1, 126 S.Ct. 1204. Importantly, the Court held that its "opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract." *Id*. This Court, however, has repeatedly observed that challenges to the existence of a contract appear to constitute valid challenges to an arbitration clause. [citations omitted]. These decisions reflect a central tenet of the FAA—that arbitration pursuant to the statute is "a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

11

> **Because, as discussed below, this Court lacks jurisdiction over the instant appeals, we cannot at the present time decide the issue of whether the district court has jurisdiction over the formation issue. Nevertheless, we note that our case law strongly suggests that the district court has the authority to determine whether the signature on an arbitration agreement is valid in advance of compelling arbitration in accordance with that agreement. To the degree that the alleged agreements in this case purport to delegate the formation question to the arbitrator's sole discretion, the Supreme Court's and our case law indicate that the district court retains the authority to first satisfy itself that the agreement was validly formed before granting a motion to compel arbitration.** The FAA's demand for consent-based arbitration agreements would be severely undermined if the law operated otherwise. As the Ninth Circuit cogently noted, "[a] contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1140 (9th Cir. 1991).

*Id*. at 576-577 (emphasis added). The Sixth Circuit dismissed Pilot's appeal for want of jurisdiction and remanded to the district court for further proceedings. *Id*. at 582. In addition, the court ordered Pilot to abide by the district court's order compelling production of the employment dates. *Id.*

Although Boyd discusses the Sixth Circuit's analysis in *Taylor*, he does not apply *Taylor* to the instant case or otherwise explain how it is directly relevant to the specific discovery motion pending before the Court. Rather, Boyd simply seeks leave to conduct additional discovery not mentioned in his original Motion, i.e., two depositions pursuant to Fed R. Civ. P. 30(b)(6) regarding "AT&T's system for creating, transmitting, receiving, and storing AT&T's electronic communications regarding its arbitration agreement, specifically with regard to Defendant Boyd." (Doc. No. 20 at pp. 3-7.) Lastly, Boyd asks the Court to strike the Declaration of Jeremy Dunlap on the grounds that it is unsigned and undated. (*Id*. at pp. 7-8.)

In its Brief in Opposition, AT&T argues that *Taylor* is not applicable because "AT&T has not argued that this Court lacks jurisdiction to decide whether a valid and enforceable agreement exists in this case, and the Court has already exercised its jurisdiction in ordering an evidentiary hearing on

this issue." (Doc. No. 22 at p. 4.) AT&T further asserts that there is no justification for Boyd's attempts to raise new arguments and request additional discovery in his "Motion to Supplement." (*Id*.) Lastly, AT&T argues that this Court should deny Boyd's request for Rule 30(b)(6) depositions as unnecessary and not proportional to the needs of this case. (*Id.* at pp. 4-8.)

The Court agrees with AT&T. As noted above, Boyd failed to timely file a Reply Brief in support of his Motion for Leave to Conduct Discovery. Instead, Boyd filed a "Motion for Leave to File Supplement" based on *Taylor*, in which he raises new legal arguments and (for the first time) requests leave to conduct two Rule 30(b)(6) depositions. Boyd, however, has failed to provide any explanation as to why he could not have brought *Taylor* to this Court's attention in a timely-filed Reply Brief.[4] Nor does he explain why he could not have requested the 30(b)(6) depositions in his original motion.

In any event, Boyd has not demonstrated that *Taylor* is relevant to the specific discovery issues presented herein. Unlike the defendant in *Taylor,* AT&T is not arguing that this Court lacks jurisdiction to determine whether the parties' alleged arbitration agreement was validly formed. Nor has AT&T argued that this Court lacks the authority to order discovery or conduct a hearing on that issue. Indeed, as AT&T correctly notes, this Court has scheduled an evidentiary hearing, at which Boyd will have the opportunity to question witnesses and introduce documentary evidence. Therefore, the Court finds that the Sixth Circuit's decision in *Taylor* decision is not a sufficient basis to warrant Boyd's attempt to seek additional discovery not timely presented in his original motion.

---

[4] Taylor was issued on April 9, 2020. Boyd's Reply Brief was due on April 13, 2020.

13

Moreover, even if the Court were to consider Boyd's Supplement, Boyd has failed to establish that either of the proposed 30(b)(6) depositions outlined therein are necessary. Boyd will have the opportunity during the upcoming hearing to question both Ms. Giordano and Mr. Dunlap regarding AT&T's system for creating, transmitting, receiving, and storing AT&T's electronic communications regarding its arbitration agreement. Boyd has not persuaded the Court that a series of Rule 30(b)(6) depositions prior to the hearing are warranted under the circumstances presented.

Accordingly, Boyd's Motion for Leave to File Supplement to Motion to Conduct Limited Discovery Instanter is denied.

Lastly, Boyd moves to strike the affidavit of Jeremy Dunlap, which is attached as Exhibit E to the Complaint. (Doc. No. 1-5.) Boyd asserts that the affidavit is both unsigned and undated and, therefore, fails to meet the requirements of 28 U.S.C. § 1746. (Doc. No. 20 at p. 7.) In response, AT&T states that, on April 16, 2020, counsel for AT&T contacted the Court, copying Boyd's counsel, concerning the Dunlap Declaration. (Doc. No. 22.) AT&T indicates that "the Court confirmed that the filed version of the Dunlap Declaration is signed" and attaches an email from the Court to that effect. (*Id.*) *See also* Doc. No. 22-1.

The Court has reviewed Mr. Dunlap's Declaration (attached as Exhibit E to the Complaint) and again confirms that it is both signed and dated. (Doc. No. 1-5.)

Accordingly, Boyd's Motion to Strike is denied.

## IV.    Conclusion

For all the reasons set forth above, Defendant Robert Boyd's Motion for Leave to Conduct Limited Discovery (Doc. No. 18) and Motion for Leave to File Supplement to Motion to Conduct

Limited Discovery Instanter and Motion to Strike the Declaration of Jeremy Dunlap (Doc. No. 20) are DENIED.

**IT IS SO ORDERED.**

Date:  May 21, 2020

     *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE